**FORMS MANUFACTURING, INC., Appellant,**

v.

**John EDWARDS, Respondent.**

No. 49523.

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 24, 1985.

Motion for Rehearing and/or Transfer Denied Jan. 21, 1986.

Application to Transfer Denied March 25, 1986.

Evans & Dixon, Stefan J. Glynias, Gerre S. Langton, Thomas K. Lammert, Jr., St. Louis, for appellant.

Riezman & Blitz, Robert D. Blitz, Clayton, for respondent.

CRANDALL, Presiding Judge.

This appeal involves an action by plaintiff, Forms Manufacturing, Inc. (company), for an injunction and damages for breach by defendant, John Edwards (employee), of a restrictive covenant not to compete contained in an employment contract. Employee counterclaimed for money owed to him by company. The trial court, in a court-tried case, found for employee on company's claim for injunctive relief and damages and for company on employee's counterclaim. Company appeals from the judgment for employee on the contract action, alleging error in the trial court's refusal to grant an injunction or to award damages. We affirm.

The standard of appellate review in a court-tried case is controlled by the oft-cited *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We accept as true the evidence and reasonable inferences therefrom favorable to the prevailing party and disregard the contradictory evidence. *Ware v. Ware*, 647 S.W.2d 582, 584 (Mo. App.1983). Although the evidence might support a different result, we give deference to the trial court's conclusion. *Fountain v. Schlanker*, 651 S.W.2d 594, 596 (Mo.App.1983). Within this scope of review we now consider company's appeal.

In May 1980 employee agreed to sell business forms for company. In return, employee was to receive a commission of sixty percent of the gross profits from his sales and company was to receive the remaining forty percent. Employee would take a monthly draw against his "department" account in which the total amount of commissions due him was kept. As a condition of employment, employee signed an agreement which consisted of a covenant not to compete.[1] All sales personnel for

1. The agreement provided:
   In consideration of my Continued employment by Forms Manufacturing, Inc., a Missouri corporation, I hereby promise and agree that I will not, while in the service of Forms Manufacturing, Inc., in the general Metropolitan Area including the Missouri Counties of St. Charles, Franklin, St. Louis, Jefferson, and Illinois Counties of Madison and St. Claire (sic), or at anytime thereafter, disclose to any person the business methods, names or addresses of the clients, or the trade secrets of Forms Manufacturing, Inc.; and, further, while in the service of Forms Manufacturing, Inc., and for a period of three (3) years after leaving the service of Forms Manufacturing, Inc., will not, under any circumstances or conditions whatsoever, engage in, or become interested, directly or indirectly, as an individual, partner, stockholder, director, officer, agent, employee, trustee, or in any other relation or capacity whatsoever, in or to, the business of the distribution of, sales of, or manufacture of Business forms, the like of which are distributed, sold or manufactured by Forms Manufacturing, Inc., within any state in which Forms Manufacturing, Inc. is now engaged in business or will be engaged in business at the time of the termination of my employment.
   Further, as a part of the consideration of this Agreement, I agree that I will not, at any time, while in the employ of Forms Manufacturing, Inc., or within three (3) years after leaving its services from whatsoever, cause, for myself or for any other person or company in any way directly or indirectly divert, take away, or attempt to divert or take away or solicit any of the clients of Forms Manufacturing, Inc. It is further expressly agreed that if I, while this Agreement remains in effect, shall violate any of its terms by entering into the employ or service, or otherwise act in aid of the business of any rival company or concern engaged in the same or similar general line of

the company were required to execute this employment contract.

In March 1981 company informed employee that, from then on, all salespersons would be required to produce sufficient gross profit commissions each month to guarantee the company a minimum of $500. This figure was increased periodically until, by April 1982, the monthly minimum contribution had risen to $2,000 for each salesperson. If for any month a salesperson's sales were not sufficient to cover this minimum amount, he would owe company the difference.

In April 1982 employee's department account contained approximately $15,000 in commissions. Employee requested that he be allowed to draw $10,000 for that month. Company permitted only a $5,000 draw. Over the next several months, on approximately twenty occasions, employee asked for his commissions and was refused.

It was April 1983 before employee first realized that company was enforcing the monthly minimum contribution policy. At that time he received a copy of his department account for November 1982 which indicated that his sales for that month had been insufficient to cover the $2,000 minimum. Employee complained to company about the practice of assessing each salesperson a minimum amount every month.

In June 1983 company called a meeting with all the sales personnel to discuss its minimum contribution policy. Company agreed to allow each salesperson one month for which it would waive the minimum contribution requirement. Company thereafter waived employee's minimum contribution for November 1982.

On October 10, 1983, employee terminated his employment with company. In September he had started his own business which also sold business forms. His new business continued to sell to some customers who had also been his customers when he was employed by company.

Company raises three points on appeal. The first and second points allege error in the trial court's failure to enforce the restrictive covenant not to compete by enjoining employee from selling business forms and failure to award company damages for profits lost as a result of employee's procuring some of its customers. Company's third point challenges the trial court's finding that company breached the employment contact and that such breach was not waived by employee.

■ If company breached the employment agreement before employee allegedly violated the covenant not to compete, then company is barred from enforcing the restrictive covenant against employee. A party to a contract cannot claim its benefits where he is the first to violate it. *S.G. Adams Printing v. Central Hardware Co.*, 572 S.W.2d 625, 629 (Mo.App.1978).

■ The question of whether company unilaterally breached the contract before employee violated the restrictive covenant, such that employee was excused from performance, was largely an issue of fact for the trial court. Employee agreed to work for company and to be compensated on the basis of sixty percent of the gross profits on his commissions. Based upon that offer, he signed the restrictive covenant not to compete. Later, company unilaterally changed the contract by establishing a monthly minimum contribution, which started at $500 and was increased later to $2,000. Additionally, on numerous occasions employee requested commissions from his department account. Company repeatedly refused, although at the time of such requests employee's account was sufficient to cover the required minimum contribution. Because company retained his commissions, employee was forced to borrow money from a bank to cover his expenses. Based upon these facts, there was sufficient evidence for the court to find that company's conduct "in establishing the

business, or solicit any of the clients of Forms Manufacturing, Inc. shall be entitled to an injunction to be issued by any competent Court of equity, in enjoining and restraining

me from the continuation of such employment, service, solicitation or any act in aid of the business of any rival company or concern.

minimum contribution without [employee's] consent, and retaining [employee's] commissions were both a breach of contract by [company], and rose to the level of unclean hands." It follows that the trial court reasonably could have found that company was not entitled either to an injunction or to damages for employee's alleged breach of the restrictive covenant not to compete because of its own prior breach of the employment contract. Company's first and second points as well as the first part of its third point are denied.

In the second part of its third point company argues that, even if it did breach the employment contract, employee waived its breach by acquiescing to the minimum contribution policy. Company asserts that the institution of the monthly minimum contribution was a modification of the contract, and that employee's continuing to work for company after he knew that the policy was in effect was adequate consideration for the modification. *See Reed, Roberts Associates, Inc. v. Bailenson,* 537 S.W.2d 238, 241 (Mo.App.1976). An employee cannot repudiate the unfavorable terms of the modified contract when he has claimed the benefits of continued employment under it. *See Chemical Fireproofing Corp. v. Bronska,* 542 S.W.2d 74, 79 (Mo.App.1976).

The burden is on company, however, to prove waiver by employee of company's breach of contract. Employee voiced opposition to the minimum contribution policy from the moment he was aware that it was being utilized in April 1983. Although he remained in the employ of company, he did so only for about six months after learning of the enforcement of the minimum contribution.[2] During that six-month period he initially tried to persuade company to discontinue the minimum contribution policy. It can be inferred that, after the June 1983 meeting, employee realized his attempts to eliminate the minimum contribution practice were futile and used the remainder of the six months to find other employment.

Considering the evidence and the inferences drawn therefrom in the light most favorable to the prevailing party, the trial court reasonably could have found that employee did not waive company's breach of the employment contract. The second part of company's third point is denied.

Employee has requested that this court award damages for a frivolous appeal. Rule 84.19. The remedy provided in Rule 84.19 is drastic and is warranted only where the questions raised on appeal are not "fairly debatable." *Bowman v. Burlington Northern, Inc.,* 645 S.W.2d 9, 13 (Mo.App.1982). The factual issue of whether the restrictive covenant was enforceable was "fairly debatable." In addition, employee has shown no bad faith on the part of company. *Goodloe v. Pink,* 683 S.W.2d 653, 656 (Mo.App.1984). Employee's request for damages for frivolous appeal is denied.

The judgment of the trial court is affirmed.

KELLY and PUDLOWSKI, JJ., concur.

---

**2.** *Compare Chemical Fireproofing Corp. v. Bronska,* 542 S.W.2d at 78–79 (continued employment for 2¼ years); *Long v. Huffman,* 557 S.W.2d 911, 913 (Mo.App.1977) (continued employment for 2 years).