**Paul R. LUKETICH, Plaintiff–Respondent,**

v.

**GOEDECKE, WOOD & CO., INC., Defendant–Appellant.**

No. 60895.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 30, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
July 30, 1992.

Application to Transfer Denied
Sept. 22, 1992.

Ziercher & Hocker, P.C., G. Carroll Stribling, Clayton, for defendant-appellant.

Brown & James, P.C., William I. Rutherford, St. Louis, for plaintiff-respondent.

KAROHL, Judge.

Goedecke, Wood & Company, (Goedecke), appeals from a judgment in a court-tried

case. The trial court permanently enjoined Goedecke from making threats of litigation to enforce a non-compete agreement against former employee Paul Luketich and any employer or prospective employers. Goedecke was also ordered to pay damages in the amount of $44,989 for tortious interference with Luketich's contractual relations or business expectancy with Patent Scaffolding, (Patent), his subsequent employer. Goedecke presents four points on appeal. They can be summarized as the following two points of error: (1) there was no substantial evidence to support a finding that Goedecke unilaterally breached its contract with Luketich thereby rendering the non-compete restrictive covenant unenforceable; and (2) there was no substantial evidence to support Luketich's claim that Goedecke's actions were done with intent to cause a breach of contract and were done without justification. We affirm in part and reverse in part.

Goedecke is in the business of selling construction industry supplies and equipment. It operates in Missouri, Illinois, Kentucky, and Indiana. Luketich worked for Goedecke as a salesman from 1984 until July, 1990. In June, 1985, Luketich and Goedecke executed an employment contract which called for a monthly salary and contained a restrictive covenant limiting Luketich's ability to work in a similar position and location for five years after termination of employment with Goedecke.

Goedecke became dissatisfied with Luketich's adherence to certain administrative duties, and in May, 1990, Goedecke informed Luketich he would be compensated only by way of straight commission and he would be responsible for his own expenses beginning June 1, 1990. Goedecke's stated goal was to have a new arrangement which would not result in reduction of Luketich's compensation and would eliminate disputes over noncompliance with record-keeping policies. The new method of compensation, however, would delay compensation because commission payments would not be paid until customers paid for products purchased. Luketich assumed all risks associated with client nonpayment. Luketich objected but was told his only alternative was

to resign. After failing to persuade Goedecke to return to the salary arrangement, Luketich resigned July 19, 1990.

Luketich began working for Patent Scaffolding on August 20, 1990. Patent is a competitor. Goedecke wrote letters threatening to sue both Luketich and Patent if he violated the terms of the non-compete restrictive covenant. He responded through his counsel with a letter to Goedecke apprising it of the unenforceability of the restrictive covenant because of its breach in Luketich's compensation arrangement, and referred Goedecke to Missouri caselaw in support of his position. Goedecke denied applicability of Luketich's cited authority because of its contention that Luketich's refusal to follow company rules constituted a prior breach. Negotiations between Goedecke and Patent ensued, with the result that Patent discharged Luketich on November 9, 1990 because Patent wanted to avoid being sued by Goedecke.

Luketich filed a three count petition against Goedecke after his termination from Patent. In Count I, he sought a permanent injunction preventing Goedecke from any further threats of litigation arising out of enforcement of the non-compete covenant. In Count II, he alternatively sought declaratory judgment limiting the scope of the non-compete covenant. In Count III, he sought damages for tortious interference with his contractual relations or business expectancy with Patent. Goedecke counterclaimed seeking enforcement of its non-compete agreement. The trial court found for Luketich as to Counts I and III, dismissed Count II as moot, and denied Goedecke's counterclaim. Goedecke brought this appeal, charging error in the finding that the restrictive covenant is unenforceable and in allowance for damages stemming from its attempted enforcement.

■ We note at the outset that Luketich requests we dismiss Goedecke's appeal because points improperly briefed are not preserved for review. *Cook v. Wadlington*, 821 S.W.2d 864 (Mo.App.1991); Rule 84.04(d); Rule 84.13(a). We reach the merits of this appeal for two reasons. First,

compliance with Rule 84.04 is mandatory, in part, to give "notice to the party opponent of the precise matters which must be contended with and answered." *Cook*, 821 S.W.2d at 866. Luketich was able to decipher the points of error and respond to Goedecke's brief even though the points were imperfectly stated. Second, trial court error is detailed in the argument sections of Goedecke's brief even though not in the "points relied on" section for three of the four points. Consequently, this court is not put in the untenable position of acting as an advocate "by speculating on facts and arguments which have not been made," *Id.*, and Goedecke has not been denied a fair review.

■ We review Goedecke's claims of error under the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The decree or judgment in a court-tried case will be sustained by this court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.*

■ Goedecke's first point on appeal is that the evidence at trial supported a finding that Luketich was the first to breach the employment agreement rather than a finding Goedecke unilaterally breached thereby rendering the non-compete clause unenforceable. If Goedecke materially breached the employment agreement with Luketich, then Goedecke was properly barred from seeking enforcement of the non-compete covenant. *Forms Mfg., Inc. v. Edwards*, 705 S.W.2d 67, 69 (Mo.App.1985); *Smith–Scharff Paper Co., Inc. v. Blum*, 813 S.W.2d 27, 28 (Mo.App.1991). In *Forms Mfg.*, the employer changed its salespersons' compensation arrangement requiring them to produce a certain volume each month in order to receive full commission payments. This change in salespersons' compensation was held to be a unilateral breach on the part of the employer, barring the employer from enforcing its non-compete covenant against its employees. "A party to a contract cannot claim its benefits where he is the first to violate it." *Forms Mfg.*, 705 S.W.2d at 69.

■ The question of whether Goedecke unilaterally breached the contract was largely a question of fact for the trial court. *Id.* In examining the evidence, we give deference to the trial court's opportunity to observe the parties while testifying, assess their credibility, and weigh their sincerity of character. *Smith–Scharff*, 813 S.W.2d at 28. The evidence before the trial court included:

(1) an employment contract which set a monthly salary subject to change as agreed upon by the parties;

(2) testimony that Luketich was reimbursed for expenses and received regular bonuses and increases in salary prior to June, 1990;

(3) a new commission-only compensation agreement imposed by Goedecke;

(4) testimony that Luketich objected to the new compensation arrangement;

(5) testimony that Luketich's deficiencies in call reports were presented in a light-hearted manner;

(6) testimony that Luketich's expense report errors were small and often in favor of the Goedecke;

(7) testimony that a 30–90 delay in compensation would result from the new commission arrangement, thereby decreasing Luketich's income up to $10,000 in 1990.

In short, there was ample evidence to support the trial court's conclusion that when Goedecke "unilaterally changed [Luketich's] compensation ..., it materially breached ... thereby entitling him to repudiate the agreement, which he did, and entitling him to accept employment free of the restrictions of the covenant not to compete contained in the agreement."

Goedecke makes much of Luketich's record-keeping deficiencies and touts its generosity for allowing him to remain employed. Goedecke points to Missouri case-law holding disobedience of known rules, orders and instructions of the employer justify the employee's discharge. *Craig v. Thompson*, 244 S.W.2d 37, 41 (Mo. banc 1951). Similarly, any material failure of performance by one party not justified by

the conduct of the other discharges the latter's duty to give the agreed exchange. *Blythe v. Blythe*, 586 S.W.2d 393, 396 (Mo. App.1979). Goedecke suggests if it was justified in firing Luketich, then it must have been justified in altering his compensation. The trial court's finding that Goedecke unilaterally breached the employment contract presumes a finding that Luketich's conduct did not amount to a prior breach. The employment contract was silent as to administrative requirements. Therefore, the materiality of record-keeping shortcomings was a matter for the trial court to determine. Even if the evidence might support a different result, we give deference to the trial court's conclusion. *Forms Mfg.*, 705 S.W.2d at 68.

The trial court's findings are further bolstered by *Smith–Scharff*, which applied *Forms Mfg.* to affirm the unenforceability of a covenant not to compete where the company unilaterally breached a salesperson's compensation arrangement, even though in response to the salesperson's poor performance.

The trial court's order enjoining Goedecke from further attempts to enforce the non-compete covenant contained in the employment agreement between the parties is affirmed.

█ Goedecke's second point on appeal is there was no evidence to support a finding that Goedecke intended to interfere with Luketich's business relationship with his new employer or that Goedecke's actions were not justified. A claim for tortious interference with a contract or business expectancy requires proof of each of the following: (1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct. *Community Title Co. v. Roosevelt Fed. Sav. and Loan Ass'n*, 796 S.W.2d 369, 372 (Mo. banc 1990). The trial court made the following findings with respect to each element:

I. There was a valid business expectancy in [Luketich's] at-will employment with Patent Scaffolding.

II. [Goedecke] knew of the employment and wrote letters about it.

III. [Goedecke] interfered intentionally with the relationship by threatening suit against Patent Scaffolding.

IV. There was an absence of justification in that the unilateral change of the terms of [Luketich's] employment from being compensated primarily by way of salary to being compensated entirely by way of commission was a material breach of the agreement under the *Forms Manufacturing* case. [Goedecke] management had been warned clearly and unequivocally of the facts and the law, and had been invited to investigate prior to filing suit.

V. [Luketich] was damaged in that he was directly caused to lose past and future wages.

Goedecke challenges the validity of the findings with respect to the third and fourth elements. We will only address "absence of justification" because it is dispositive.

█ Under Missouri law, Luketich has the burden of producing substantial evidence to establish the absence of justification. *Community Title*, 796 S.W.2d at 372. According to Luketich's evidence at trial, the interference with his relationship with Patent was caused by Goedecke's threat to sue Patent and Luketich for violation of its non-compete covenant. The law in Missouri is settled that no liability arises for procuring a breach of contract where the breach is caused by the exercise of an absolute right, that is, an act which one has a definite legal right to do without any qualification. *Herring v. Behlmann*, 734 S.W.2d 311, 314 (Mo.App.1987); *Pillow v. General American Life Ins. Co.*, 564 S.W.2d 276, 281 (Mo.App.1978). As a matter of law, Goedecke was justified in attempting to enforce its rights under the non-compete agreement with Luketich as long as Goedecke had a reasonable, good faith belief in the validity of the agree-

ment. The sole issue, therefore, is whether Luketich presented evidence to prove Goedecke lacked a reasonable, good faith belief in the inapplicability of *Forms Mfg.* to its set of facts. In other words, the factual question before the trial court was whether Luketich proved Goedecke was not simply exercising a legal right.

We have already decided Goedecke's unilateral breach in the compensation of Luketich rendered the non-compete restrictive covenant unenforceable. However, neither party had the benefit of the trial court's judgment during the period from July to November, 1990. During that period both sides held conflicting positions on the enforceability of the restrictive covenant.

Goedecke pled and presented evidence that it was doing nothing more than making a good faith assertion of contractual rights. Luketich's ability to approach Goedecke's clients on behalf of Patent and within the restricted area would have had an economic impact on Goedecke. Luketich did not present any evidence at trial to prove Goedecke could not or did not reasonably believe in the validity of its restrictive covenant. Goedecke consistently maintained its position that Luketich's conduct amounted to a prior breach, thereby distinguishing *Forms Mfg.* There was evidence Goedecke was warned that the non-compete agreement was invalid under *Forms Mfg.*, but there is no evidence Goedecke was bound to agree with such a conclusion. In fact, Patent's action of discharging Luketich and the fact that a full blown trial was needed to resolve the validity of the restrictive covenant indicate the contested nature of the issue. We find no evidence of bad faith on the part of Goedecke when it attempted to enforce the non-compete restrictive covenant portion of its contract against Luketich.

■ Goedecke was entitled to assert its right to enforce the restrictive covenant unless in doing so it employed some improper means. *Community Title*, 796 S.W.2d at 373. "Improper means, for purposes of intentional interference with contractual relations or business expectancy, are those means which are independently

wrongful, notwithstanding injury caused by the interference." *Id.* The contention Goedecke was misinterpreting its legal position is different than a claim Goedecke utilized improper means.

The trial court erred in sustaining employee's action for tortious interference with contractual relations or business expectancy because there was no evidence to support a finding Goedecke lacked justification to assert its legal right.

We affirm the judgment on Count I enjoining Goedecke, Wood & Company, Inc. from further attempts to enforce the non-compete restrictive covenant against Luketich. We reverse the judgment on Count III for tortious interference with contract because Goedecke had a legal right to assert its contractual rights before the validity of the agreement was litigated and decided on a dispute of fact, and there was no evidence to support a finding Goedecke lacked justification.

SMITH, P.J., and AHRENS, J., concur.